UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| LUCIEN SCOTT MCARTHUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13-1248 |
| | ) | |
| ANDREW TILDEN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER & OPINION**

Plaintiff, proceeding pro se and presently incarcerated at Pontiac Correctional Center, brings the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment Claim for deliberate indifference to a serious medical need, and a conspiracy claim. The matter comes before this Court for ruling on motions for summary judgment filed by Defendants Tilden and Wexford (Doc. 44) and Defendants Bruner, Melvin, Pfister, and Reed (Doc. 46). For the reasons discussed below, the motions are granted.

**LEGAL STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTUAL BACKGROUND[1]

Plaintiff is a prisoner incarcerated at Pontiac Correctional Center ("Pontiac"). In May 2003, Plaintiff suffered a fracture to his left heel that required surgery. Shortly thereafter, and as part of Plaintiff's aftercare for the surgery, a podiatrist recommended Plaintiff wear a specific type of shoes, though some dispute exists over whether these shoes were "orthopedic." Nonetheless, Plaintiff was issued a new pair of the special shoes every two years until August 2012. Plaintiff requested a new pair of shoes at that time stating that his current pair had worn down and did not provide support. Defendant Tilden, the medical director at Pontiac, reviewed Plaintiff's medical records and opined that Plaintiff did not need the specially ordered shoes Plaintiff had previously been issued as the "state-issued" shoes available at Pontiac could adequately meet Plaintiff's needs. Defendant Tilden based this opinion on his observations that Plaintiff had a strong gait and a good range of motion in his hips, could walk with minimal discomfort, and several x-rays taken periodically since Plaintiff's surgery showed no bony abnormalities in Plaintiff's foot, and did not indicate that Plaintiff's foot condition was worsening. Furthermore, Plaintiff did not complain about foot pain. Instead, Plaintiff's complaints of pain focused on his hips. With regards to his hip pain, Defendant Tilden concluded that Plaintiff most likely suffered from degenerative joint disease and osteoarthritis in his hips. To treat those conditions, Plaintiff was consistently prescribed pain medication and issued low bunk permits. Plaintiff alleges that Defendant Tilden's denial of the shoes amounts to deliberate indifference to a serious medical need.

---

[1] Unless otherwise noted, these facts are undisputed.

After Defendant Tilden's decision to not renew the order for Plaintiff's special shoes, Plaintiff made several requests to obtain copies of his medical records. Plaintiff was eventually provided copies of the requested records, though with some delay with respect to a portion of the records as Pontiac officials had difficulty locating them. As a result of Plaintiff's alleged difficultly obtaining his medical records, combined with Defendant Tilden's decision to not renew his shoes, Plaintiff alleges that Defendants Pfister, Reed, Melvin, Bruner, and Tilden conspired to deprive Plaintiff of adequate medical care, specifically related to Plaintiff's shoes.

## ANALYSIS

### Deliberate Indifference to a Serious Medical Need

To implicate a violation of the Eighth Amendment for inadequate medical care, the Plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference is more than negligence, but does not require the plaintiff to show that the defendants intended to cause harm. *Mayoral v. Sheehan*, 245 F.3d 934, 938 (7th Cir. 2001). Liability attaches under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### Defendants Tilden and Wexford

Defendants Tilden and Wexford argue that Plaintiff did not suffer from a serious medical need because Plaintiff did not actually need orthopedic shoes. "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotations omitted). In evaluating the seriousness of a medical condition, the court evaluates several factors: (1) whether failure to treat the condition would result in further significant injury or the unnecessary and wanton infliction of pain; (2) whether a reasonable doctor or patient would find the alleged injury worthy of comment or treatment; (3) the existence of a medical condition that significantly affects daily activities; and, (4) the existence of any chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

The parties agree that Plaintiff suffered a heel injury in May 2003 that required surgery and resulted in the placement of several screws in Plaintiff's heel. According to Plaintiff, doctors told him that he would always experience some degree of pain with likely development of arthritis in the hips, ankles, and knees. Pl. Dep. 32:9-17. The medical records show that Plaintiff was consistently prescribed pain medication that alleviated, or reduced, at least some of the resulting and ongoing pain. These facts, when viewed in a light most favorable to the Plaintiff, show that Plaintiff suffered from an objectively serious medical need for purposes of the Eighth Amendment.

As part of the basis for denying Plaintiff's requests for new footwear, Defendant Tilden, the medical director at Pontiac, asserts that orthopedic shoes were not ordered as part of the podiatrist's initial recommendation, and that Plaintiff was subsequently given a pair of "state-issued" leather shoes. Plaintiff counters by stating that "state-issued" leather shoes do not exist and, therefore, his shoes must have been orthopedic. A review of the podiatrist's initial recommendation shows that Plaintiff was given a recommendation for "special shoes other than state-issued shoes." (Doc. 44-23). From this, the Court must assume for purposes of this ruling that the shoes Plaintiff received were not of the type issued or readily available to inmates

without a doctor's order.  Whether the shoes were truly "orthopedic" remains up for debate, but nonetheless, the recommendation for special shoes was made as part of an overall treatment plan designed towards the end of alleviating the pain associated with, and assisting in the healing of, Plaintiff's original injury.  When viewed in this light, Defendant Tilden's decision to discontinue the recommendation for special shoes is a matter of professional discretion with which the courts will not interfere unless the evidence suggests that "'no minimally competent professional would have so responded under those circumstances.'"  *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)).  In other words, a medical professional is deliberately indifferent only if "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting same).  Within these bounds, a prison medical professional "is free to make his own, independent medical determination as to the necessity of certain treatments or medications," and deference to a prior doctor's diagnosis is not required to satisfy the requirements of the Eighth Amendment.  *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012).

Plaintiff states in his response to the Defendants' motions for summary judgment that his difficulty walking is a result of severe foot pain.  The medical records, however, show that Plaintiff's complaints of foot pain since 2009 have been few and far between.  The medical records indicate that Plaintiff's complaints of pain related primarily to the diagnosed osteoarthritis in Plaintiff's hips.  To what extent Plaintiff's special shoes played a role in aggravating or reducing the amount of pain Plaintiff experienced is difficult to ascertain as Plaintiff experienced hip and foot pain even with the special shoes and, according to Plaintiff, lifelong pain was expected by the very nature of his original injury.  According to the medical

records, Plaintiff responded favorably to the pain medication he was administered and there is no dispute that Plaintiff received this medication on a regular basis. Plaintiff does not allege that his requests for medical treatment were categorically denied, only that he was not provided with the specific treatment he desired. In this scenario, the law is clear: a mere disagreement with the course of medical treatment, without more, is not sufficient to attach constitutional liability. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). The parties do not dispute that Defendant Tilden made his treatment decision after a review of Plaintiff's medical records. Given that the original recommendation was made almost a decade prior to Defendant Tilden's review, Plaintiff's relative lack of complaints of foot pain, medical evidence that Plaintiff's condition was not getting worse, and Plaintiff's favorable response to the pain medication administered, the Court cannot say that Defendant Tilden's determination fell outside the bounds of acceptable professional judgment. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (prison doctor's determination that inmate did not need soft-soled shoes made after review of inmate's medical records was not deliberate indifference); *Askew v. Davis*, No. 14-2980, 2015 WL 3477797, at *2-3 (7th Cir. June 2, 2015) (determination that soft-soled shoes were not medically necessary was not deliberate indifference). Therefore, the Court finds that no reasonable juror could conclude that Defendant Tilden was deliberately indifferent to Plaintiff's serious medical needs.

Next, Defendant Wexford, as a private corporation, may be held liable under § 1983 if "the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself," but may not be held liable under a theory of respondeat superior. *E.g. Shields v. Ill. Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). There is no evidence in the record to show that Plaintiff

suffered a constitutional deprivation as a result of an unconstitutional Wexford policy. Thus, Defendant Wexford is entitled to judgment as a matter of law.

## Defendants Pfister, Reed, Melvin & Bruner

Defendants Pfister, Reed, Melvin and Bruner are non-medical prison administrators at Pontiac, serving at the time in the capacities of Acting Warden, Assistant Warden of Programs, Health Information and Site Privacy Officer, and Correctional Counselor, respectively. These defendants are not trained medical professionals and they are not responsible for administering medical care to inmates at the facility.

Courts in this Circuit have been reluctant to impose constitutional liability upon nonmedical prison officials in cases where the official deferred to the judgment of the medical staff. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored (citations omitted)); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (no deliberate indifference where nonmedical prison official investigated inmate's complaints and referred then to medical providers who could be expected to address the concerns); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (no deliberate indifference where nonmedical prison official referred inmate complaints to medical providers). As the court in *Greeno* explained:

> If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno*, 414 F.3d at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). In other words, "the law encourages non-medical security and administrative personnel at jails and

prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." *Berry*, 604 F.3d at 440.

With respect to Plaintiff's claim regarding inadequate medical care, Defendants Pfister, Reed, Melvin, and Bruner were entitled to rely upon the medical opinions of Defendant Tilden. As discussed above, there are no allegations that Plaintiff's requests for medical care were being ignored, and given this fact, these defendants were entitled to defer to opinions of Pontiac's medical staff with regards to Plaintiff's medical treatment. Therefore, no reasonable juror could conclude that Defendants Pfister, Reed, Melvin, and Bruner were deliberately indifferent to Plaintiff's serious medical need.

## **Conspiracy**

Plaintiff alleges that Defendants Pfister, Reed, Melvin, Bruner, and Tilden conspired to deprive him of adequate medical care, specifically the special shoes. After Defendant Tilden's decision to not renew Plaintiff's special shoes, Plaintiff alleges that prison officials continually stonewalled his efforts to obtain his medical records. Plaintiff asserts he filed several grievances and wrote several letters to no avail, often waiting several months for a response. The combination of Defendant Tilden's decision and the other defendants' efforts to deny Plaintiff copies of his medical records is, Plaintiff alleges, evidence of a conspiracy to deny Plaintiff his right to orthopedic shoes. A bare allegation of conspiracy is not enough to state a plausible conspiracy claim: there must be sufficient allegations of fact showing or giving rise to a plausible suggestion of an agreement or conspiracy between the various defendants. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009); *Cooney v. Rossiter*, 583 F.3d 967, 970-71 (7th Cir. 2009).

To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that "state official[s] . . . reached an understanding [among themselves] to deprive the plaintiff of his constitutional rights." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (internal citations omitted). Plaintiff does not provide any evidence that the defendants reached an understanding to deprive him of any constitutional rights. Plaintiff, instead, alleges that the defendants must have conspired given that five defendants were involved in some capacity with Plaintiff's requests for special shoes and medical records. Pl. Dep. 55:7-18. Absent any evidence of an agreement or understanding between these defendants, a reasonable juror could not find in Plaintiff's favor on the issue of conspiracy. Therefore, the defendants are entitled to judgment as a matter of law on the conspiracy allegations.

## Conclusion

For the foregoing reasons, the Court finds that no reasonable juror could find in Plaintiff's favor on the alleged constitutional violations. Therefore, the Defendants' Motions for Summary Judgment [44][46] are granted.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motions for Summary Judgment are GRANTED [44][46]. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does**

**choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 10th day of June, 2015.

          *s/Joe B. McDade*
          JOE BILLY MCDADE
         UNITED STATES DISTRICT JUDGE